# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **STACIE JEFFERS, on behalf of herself and others similarly situated,** 27 E. Woodstone Dr. Pataskala, Ohio 43062 | : : : : : | |
| Plaintiff, | : : | CASE NO. 2:17-cv-61 |
| vs. | : : : | JUDGE |
| | : | MAGISTRATE JUDGE |
| **NETJETS SERVICES, INC.** c/o Statutory Agent Corporation Service Company 50 W. Broad Street, Suite 1330 Columbus, Ohio 43215 | : : : : : : | **Jury Demand Endorsed Hereon** |
| Defendant. | : | |

## COMPLAINT

NOW COMES Plaintiff Stacie Jeffers ("Plaintiff") and proffers this Complaint for damages against Defendant NetJets Services, Inc. ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("Chapter 4111") and Ohio common law.

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the law of the United States and over actions to secure equitable and other relief.

3. This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiff Jeffers entered into an employment relationship with Defendant in the Southern District of Ohio and performed her job duties there and Defendant is doing and has done substantial business in the Southern District of Ohio.

## THE PARTIES

5. The named Plaintiff, Stacie Jeffers, is an individual, a United States citizen, and a resident of the state of Ohio. Ms. Jeffers resides in Licking County, Ohio.

6. Defendant NetJets Services, Inc. is a Delaware Corporation doing business in the Southern District of Ohio.

## WAGE AND OVERTIME

7. At all times relevant herein, Plaintiff was an employee of Defendant as defined in the FLSA and O.R.C. Chapter 4111.

8. At all relevant times herein, Plaintiff was an hourly, non-exempt employee of Defendant as defined in the FLSA and O.R.C. Chapter 4111.

9. Plaintiff brings this action on her own behalf and on behalf of those similarly situated, and has given her written consent to bring this action to collect unpaid overtime and other unpaid compensation under the FLSA. The consent is being filed along with the Complaint pursuant to 29 U.S.C. § 216(b). (Attached as Exhibit A).

10. Defendant NetJets Services, Inc. is a covered "employer" as that term is defined by the FLSA, and O.R.C. Chapter 4111.

11. At all times relevant to this action, Defendant was engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendant constituted an enterprise engaged in commerce within the meaning of the FLSA.

**FACTUAL BACKGROUND RELEVANT TO ALL CLAIMS**

12. Plaintiff began working full time for Defendant in or around January of 2014 as an Owner Services Representative and remained in that position until approximately June of 2015.

13. Plaintiff's job duties as an Owner Services Representative included taking phone calls from customers (plane owners) and addressing issues related to flights, fuel, catering and scheduling.

14. Defendant is a private aircraft provider, providing aircrafts that accommodate 7 to 14 people. Defendant's operations center is located in Columbus, Ohio.

15. In or around July of 2015, Plaintiff became a Crew Support Representative and remained in that position until her termination in December of 2016.

16. Plaintiff's job duties as a Crew Support Representative consisted of taking phone calls from pilots, crew members, and flight attendants, and addressing issues related to flights, including routing information, catering and scheduling.

17. As a Crew Support Representative, Plaintiff not only took calls but also utilized a messaging/chat software called "Crewcom" to communicate with crew members to related to her job responsibilities.

18. At all times relevant herein, Owner Services Representatives and Crew Support Representatives, including Plaintiff, were non-exempt employees and paid hourly on a bi-weekly basis.

19. At the time of hire, all Owners Services Representatives and Crew Support Representatives, including Plaintiff, are told they will be entitled to shift differential or shift premium.

20. Shift differential is a set amount paid per shift according to the "Shift Differential Grid" attached hereto as Exhibit B.

21. The amount of shift differential paid to an employee depends on the day of the week and the time each shift begins. See Exhibit B.

22. Shift differential is paid per shift, not per hour.

23. Owner Services Representatives, Crew Support Representatives, and other hourly, non-exempt employees in various other positions are subject to the Shift Differential Grid.

24. All Owner Services Representatives, Crew Support Representatives, and other hourly, non-exempt employees in various other positions employed by Defendant are subject to the same policies and procedures - including wage and hour policies.

25. Owner Services Representatives, Crew Support Representatives, and other hourly, non-exempt employees in various other positions regularly work over 40 hours per week.

26. The shift differential paid to Owner Services Representatives, Crew Support Representatives, and other hourly, non-exempt employees in various other positions must be included when calculating the "regular rate of pay" when determining the overtime rate for hours worked in excess of 40 in a workweek.

27. For the entirety of Plaintiff's employment with Defendant, Defendant has not included the shift differential earned when determining the regular rate of pay before calculating overtime pay, thereby resulting in unpaid overtime.

28. Upon information and belief, Defendant has never added shift differential to an employee's total compensation before determining the "regular rate" of pay for calculating overtime pay.

29. At all times relevant herein, Owner Services Representatives and Crew Support Representatives were not paid overtime compensation at a rate of one and one half times their regular rates of pay for all hours worked in excess of 40 in a workweek.

30. In early December of 2016, Plaintiff noticed she was being shorted the shift differential owed to her.

31. On or about December 9, 2016, Plaintiff approached Anthony Green, Supervisor of the Light Cabin team and another Supervisor, Derek Clary, and told them she believed her check was incorrect because she was not paid the correct amount of shift differential and overtime on a particular check.

32. Mr. Green agreed and told Plaintiff to contact the Payroll Department.

33. On Friday, December 9, 2016, Ms. Jeffers emailed Brenda Magee in Payroll and told her she thought her check was incorrect and believed she was owed unpaid overtime and unpaid shift differential.

34. On Monday, December 12, 2016, Plaintiff received a call from Marlo Richardson, Human Resources Representative.

35. Ms. Richardson told Plaintiff she was suspended and being investigated for hanging up on crew members who were calling her to resolve issues.

36. Plaintiff adamantly denied hanging up on any crew member who was trying to reach her, nor had she ever had any kind of disciplinary issue while employed by Defendant.

37. On Wednesday, December 14, 2016, Ms. Richardson called Plaintiff and told her she was terminated for hanging up on crew members.

38. Richardson told Plaintiff an investigation had been conducted into her phone activity and the accusations against her were substantiated.

39. On December 20, 2016, Plaintiff received an email from Ms. Richardson, admitting Defendant had not paid the shift differential correctly. Plaintiff was told she was going to be paid for an incorrect portion of the shift differential owed to her.

40. On or about January 6, 2017, Plaintiff received payment in the amount of $159.68 and was told this amount was intended to compensate her for all of 2016. Plaintiff disputes this amount properly compensates her for all of 2016.

41. By terminating her employment almost immediately after complaining about overtime compensation and shift differential compensation, Defendant retaliated against Plaintiff because she complained that she was owed unpaid overtime and unpaid shift differential.

## **FIRST CAUSE OF ACTION**
**(FLSA Collective Action, 29 U.S.C. §201, *et seq*. -
Failure to Pay Overtime)**

42. All of the preceding paragraphs are realleged as if fully rewritten herein.

43. Plaintiff brings her FLSA claim pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of herself and all other Similarly Situated Persons ("SSPs") of the opt-in class, which includes:

> All current and former hourly, non-exempt individuals employed by Defendant for 3 years prior to the date of filing this Complaint who were that were subject to the Shift Differential Grid and who did not receive overtime payment at a rate of one and one-half times their Regular Rate of Pay for all hours worked in a workweek in excess of 40 due to Defendant's failure to include the shift differential premium when determining the Regular Rate of Pay (hereinafter referred to as "SSPs").

44. Upon information and belief, in the three years prior to the date of filing this Complaint, Defendant has continuously employed more than 150 SSPs, including between 100 and 150 Owner Support Representatives and Crew Support Representatives, in its Columbus, Ohio facility.

45. This action is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation withheld in violation of the FLSA. Plaintiff is representative of all SSPs and is acting on behalf of their interests as well as her own in bringing this action.

46. These SSPs are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, overtime compensation, liquidated damages, interest, attorneys' fees and costs under the FLSA.

47. Plaintiff and the SSPs were paid on an hourly basis.

48. Plaintiff and the SSPs were non-exempt employees.

49. Plaintiff and the SSPs frequently worked more than 40 hours per week and earned shift differential every week.

50. Defendant failed to include the shift differential when determining the regular rate of pay before calculating overtime pay of Plaintiff and the SSPs.

51. Plaintiff and the SSPs were not paid the correct overtime premium for all hours worked more than 40 in a workweek.

52. Defendant was aware that Plaintiff and the SSPs regularly worked more than 40 hours per week, but were not receiving overtime compensation at a rate of one and one-half times their regular rate of pay for hours worked in excess of 40 per week.

53. Defendant knew or should have known that it was required to pay Plaintiff and the SSPs at an overtime premium for all hours worked in a workweek in excess of 40.

54. Accordingly, Plaintiff and the SSPs were forced to work more than 40 hours per week without proper overtime compensation. As a result, Plaintiff and the SSPs have been damaged.

## SECOND CAUSE OF ACTION
### Class Action, Fed. R. Civ. P. 23; OMFWSA R.C. 4111, *et seq*. - Failure to Pay Overtime

55. All of the preceding paragraphs are realleged as if fully rewritten herein.

56. Plaintiff brings this Ohio Minimum Fair Wage Standards Act ("MFWSA") claim pursuant to Fed. R. Civ. P. 23 as a class action on behalf of herself and all other members of the following "Class," defined as:

> All current and former hourly, non-exempt individuals employed by Defendant for 2 years prior to the date of filing this Complaint who were that were subject to the Shift Differential Grid and who did not receive overtime payment at a rate of one and one-half times their Regular Rate of Pay for all hours worked in a workweek in excess of 40 due to Defendant's failure to include the shift differential premium when determining the Regular Rate of Pay.

57. Plaintiff and the other Class members regularly worked more than forty (40) hours per workweek.

58. Defendant failed to include the shift differential when determining the regular rate of pay before calculating overtime pay of Plaintiff and the Class members. Thus, Plaintiff and the Class

members were not paid the correct overtime premium for all hours worked over 40 in a workweek.

59. The Class, as defined above, is numerous such that joinder of all members is impracticable. The class consists of more than 150 members, including between 100 and 150 Owner Support Representatives and Crew Support Representatives, in its Columbus, Ohio facility.

60. Plaintiff is a member of the Class and her claim for overtime wages is typical of the claims of other members of the Class.

61. Plaintiff will fairly and adequately represent the Class and the interests of all members of the Class.

62. Plaintiff has no interest antagonistic to or in conflict with those interests of the Class that she is undertaking to represent.

63. Plaintiff has retained competent and experienced class action counsel whom can ably represent the interests of the Class.

64. Questions of law and fact are common to the class, including:

    a. Whether Defendant violated the OMFWSA by failing to include the shift differential when determining Plaintiff's and the Class members' regular rate of pay before calculating overtime pay.

    b. Whether Defendant improperly calculated Plaintiff and the Class members overtime compensation, such that Plaintiff and the Class members are owed additional overtime compensation for all hours worked in excess of a workweek over 40.

    c. Whether Defendant established its payroll policy, knowing the policy violated the law and failed to properly compensate the Class members for all hours worked in a workweek in excess of 40 at the proper rate of overtime;

    d. Whether Defendant's violations were knowing and willful;

    e. What amount of unpaid overtime compensation is owed to Plaintiff and the other Class members as a result of Defendant's violation of the OMFWSA; and

    f. What amount of prejudgment interest is due to the Class members on their unpaid overtime compensation which was unlawfully withheld.

65. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect its hourly, non-exempt employees subject to Defendant's Shift Differential Grid.

66. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) as Defendant acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

67. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) as the questions of law or fact common to Class members predominate over any questions affecting only individual members.

68. A class action is superior to individual actions for the fair and efficient adjudication of Plaintiff's claims and will prevent undue financial, administrative and procedural burdens on the parties and the Court. Plaintiff and her counsel are not aware of any pending litigation on behalf of any the Class, as defined herein, or on behalf of any individual alleging a similar claim. Because the damages sustained by individual members are modest compared to the costs of

individual litigation, it would be impractical for class members to pursue individual litigation against the Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all Class members with the efficiencies of class litigation.

### THIRD CAUSE OF ACTION
### Class Action, Fed. R. Civ. P. 23; OMFWSA R.C. 4113.15 - Failure to Tender Pay by Regular Payday

69. All of the preceding paragraphs are realleged as if fully rewritten herein.

70. Plaintiff asserts this claim under R.C. 4113.15, which requires Defendant to pay its employees within thirty (30) days of when they performed compensable work, pursuant to Fed. R. Civ. P. 23 as a class action on behalf of herself and all other members of the following "Class," defined as:

> All current and former hourly, non-exempt individuals employed by Defendant for 2 years prior to the date of filing this Complaint who were that were subject to the Shift Differential Grid and who did not receive overtime payment at a rate of one and one-half times their Regular Rate of Pay for all hours worked in a workweek in excess of 40 due to Defendant's failure to include the shift differential premium when determining the Regular Rate of Pay.

71. Defendant failed to make proper wage payments to Plaintiff and the Class for all overtime compensation for all hours worked in excess of 40 in a workweek.

72. By failing to make the wage payments within 30 days of when such payments were due, Defendant has violated R.C. 4113.15.

73. The Class, as defined above, is numerous such that joinder of all members is impracticable. The class consists of more than 150 members, including between 100 and 150

Owner Support Representatives and Crew Support Representatives, in its Columbus, Ohio facility.

74. Plaintiff is a member of the Class and her claim for proper wage payments is typical of the claims of other members of the Class.

75. Plaintiff will fairly and adequately represent the Class and the interests of all members of the Class.

76. Plaintiff has no interest antagonistic to or in conflict with those interests of the Class that she is undertaking to represent.

77. Plaintiff has retained competent and experienced class action counsel whom can ably represent the interests of the Class.

78. Questions of law and fact are common to the class, including:

   a. Whether Defendant violated R.C. 4113.15 by failing to make the proper wage payments within 30 days of when such payments were due.

   b. Whether Defendant's violations were knowing and willful;

   c. What amount of compensation is owed to Plaintiff and the other Class members as a result of Defendant's violation of R.C. 4113.15; and

   d. What amount of prejudgment interest is due to the Class members on their unpaid compensation which was unlawfully withheld in violation of R.C. 4113.15.

79. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect its hourly, non-exempt employees subject to Defendant's Shift Differential Grid.

80. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) as Defendant acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

81. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) as the questions of law or fact common to Class members predominate over any questions affecting only individual members.

82. A class action is superior to individual actions for the fair and efficient adjudication of Plaintiff's claims and will prevent undue financial, administrative and procedural burdens on the parties and the Court. Plaintiff and her counsel are not aware of any pending litigation on behalf of any the Class, as defined herein, or on behalf of any individual alleging a similar claim. Because the damages sustained by individual members are modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against the Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all Class members with the efficiencies of class litigation.

## FOURTH CAUSE OF ACTION
### Breach of Contract- Ohio Common Law
### (Plaintiff Jeffers only)

83. All of the preceding paragraphs are realleged as if fully rewritten herein.

84. Plaintiff and Defendant entered into a contract or implied contract, specifically the "Shift Differential Grid" attached hereto as Exhibit B.

85. Defendant offered and agreed to pay Plaintiff shift differential for working particular shifts.

86. At all times material herein, Plaintiff clocked in and out as instructed by Defendant and was eligible for shift differential depending on the day of the week and the time of her shift.

87. Defendant indicated its intent to be bound by the Shift Differential Grid by consistently paying Plaintiff shift differential, albeit in incorrect amounts, for shifts she worked throughout her employment.

88. Defendant incorrectly paid Plaintiff for the shift differential she was owed, thereby resulting in a shortage of shift differential paid to Plaintiff.

89. Defendant's failure to correctly pay Plaintiff the shift differential owed to her is a material breach of the contract between Plaintiff and Defendant.

90. As a direct and proximate result of Defendant's breach, Plaintiff has suffered compensable damage.

**FIFTH CAUSE OF ACTION**
**Retaliation- FLSA**
**(Plaintiff Jeffers only)**

91. All of the preceding paragraphs are realleged as if fully rewritten herein.

92. This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

93. Plaintiff engaged in a protected activity when she informed Defendant she believed it failed to properly pay her the correct amount of shift differential and failed to pay her the required overtime pay as required by law.

94. Defendant knew that Plaintiff engaged in such protected activity.

95. Shortly after Plaintiff engaged in such protected activity, Defendant terminated Plaintiff.

96. Because Plaintiff engaged in the aforementioned protected activity, Defendant took an adverse employment action by terminating Plaintiff's employment and denying her the salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

97. As a direct and proximate result of Defendant's willful and intentional conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. Accordingly, Plaintiff seeks liquidated damages, punitive damages, interest and attorneys' fees, and all other remedies available, as a result of Defendant's retaliation in violation of 29 U.S.C. §215.

## PRAYER FOR RELIEF

WHEREFORE,

    A. <u>AS TO COUNT ONE</u>. Certification as a collective action to all SSPs and appointment of named Plaintiff and her counsel to represent the Class; Payment of damages, including unpaid wages, unpaid overtime, liquidated damages, pre-judgment and post-judgment interest, costs and expenses of the litigation and administration, and attorney's fees; Injunctive relief for Defendant to cease violations of the FLSA.; and such other or additional relief deemed appropriate by the Court and available under the FLSA.

    B. <u>AS TO COUNTS TWO AND THREE</u>. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(c) on behalf of the members of the Class and appointment of Plaintiff Jeffers and her counsel to represent the class; Payment of damages, including unpaid wages, unpaid overtime, liquidated damages, pre-judgment and post-judgment interest, costs and expenses of the litigation and administration, and attorney's fees; Injunctive relief for Defendant to cease violations of the OMFWSA and Ohio Revised Code; and such other or additional relief deemed appropriate by the Court and available under Ohio law.

C. <u>AS TO COUNTS FOUR AND FIVE</u>.  Plaintiff Jeffers respectfully requests that she be awarded unpaid overtime, unpaid shift differential, back pay and benefits, pre-judgment interest, post-judgment, interest, compensatory damages, punitive damages, liquidated damages, attorneys' fees, expert witness fees and costs of this action, and any other relief which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Rachel A. Sabo, Esq.*
Rachel A. Sabo (0089226)
Peter G. Friedmann (0089293)
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, OH 43207
Rachel@TFFLegal.com
Pete@TFFLegal.com
614-610-9757 (Phone)
614-737-9812 (Fax)

Greg R. Mansell (0085197)
(*Greg@MansellLawLLC.com*)
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com*)
**Mansell Law, LLC**
1457 S. High St.
Columbus, OH 43207
Ph: (614) 610-4134
Fax: (513) 826-9311

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiffs demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/*Rachel A. Sabo*
Rachel A. Sabo (0089226)